John Joseph **WHALEN**, Petitioner,

v.

Perry **JOHNSON**, Director, Michigan Department of Corrections, and Anthony Rozman, U. S. Marshal for the Eastern District of Michigan, Respondents.

Civ. No. 6–70296.

United States District Court,
E. D. Michigan, S. D.

Oct. 13, 1977.

N. C. Deday Larene, Detroit, Mich., for petitioner.

Christine Derdarian, Asst. Atty. Gen., Lansing, Mich., for respondents.

## MEMORANDUM AND ORDER

DeMASCIO, District Judge.

The petitioner is currently serving a state sentence at a federal correctional institution.[1] He filed this petition pursuant to 28 U.S.C. § 2254 alleging that (1) the trial court erroneously admitted hearsay evidence about a certain license plate, (2) that the trial court erred in receiving testimony of a witness at petitioner's retrial since the prosecution had assured him that this particular witness did not have material evidence to offer, and would not be called, (3) that the trial court erred in permitting the

---

1. The petitioner has joined as a respondent the United States Marshal for the Eastern District of Michigan presumably because he is serving his state sentence in a federal institution. However, the United States Marshal having delivered petitioner to a designated federal institution no longer has custody of his person.

prosecutor to develop testimony of an improper photographic identification on redirect examination, (4) that the trial court erroneously instructed the jury on the law of alibi, (5) that the Michigan Supreme Court's refusal to disqualify itself from considering his application for leave to appeal denied him due process, and (6) that he was denied effective assistance of counsel at his sentencing hearing. The Michigan Attorney General has filed a motion to dismiss the petition pursuant to Fed.R.Civ.P. 12(b)(6). The parties agree:

1. On October 2, 1970, petitioner was convicted in Lenawee County Circuit Court of breaking and entering a jewelry store.

2. Petitioner's conviction was affirmed by the Michigan Court of Appeals on May 31, 1972.

3. On September 7, 1972, the Michigan Supreme Court denied petitioner leave to appeal. That court denied petitioner's motion for reconsideration on October 6, 1972. On December 18, 1973, however, the court *sua sponte* granted petitioner leave to appeal, reversed his conviction and ordered a new trial.

4. On March 30, 1974, following retrial, petitioner was convicted and was sentenced by Circuit Judge Rex B. Martin to six years, eight months to ten years for breaking and entering and two years, eight months to four years for larceny in a building. The Michigan Court of Appeals affirmed the conviction and the Michigan Supreme Court, thereafter, denied a motion by petitioner for recusal and denied him leave to appeal.

The trial transcript discloses that the jewelry store burglars used welding equipment to cut a hole through the wall into the jewelry store. The owner of the adjacent store happened upon the scene as the burglars ran out the front door knocking him down. He described the getaway car to the police. The police arrived and found a collection of cutting torches, tools and other equipment in the basement area. The jewelry store safe had been opened by drilling and removing the dial. All valuable jewelry had been taken from the safe and a display case. Later that evening, two Michigan State Police Troopers stopped a 1966 White, Lincoln Continental, matching the description of the getaway car, headed toward Toledo, Ohio. The petitioner was driving the vehicle and his codefendants were passengers. The troopers found the jewelry and an undisclosed amount of cash in the car.

A prosecution witness, Nicholas Pollard, testified that while employed at Metro Welding Supply Company, in Detroit, Michigan, three persons came into the store and bought welding equipment, that the following day petitioner returned to exchange cylinders purchased the prior day. Petitioner sought to exclude Pollard's identification of petitioner alleging that the in-court identification would be tainted by a prior display of photographs. Upon a separate record, Mr. Pollard testified that several months before March 19, 1969, police sergeant Eugene McBride talked to Mr. Pollard's supervisor (Neal Stoneback) and asked that he be notified of any purchase of a hot rod device generally used to burn through concrete and heavy steel plate. Mr. Pollard testified that because he was suspicious of petitioner's purchase, he jotted down the license number of his car and gave the license number to Mr. Stoneback who relayed the information to Sergeant McBride. Sergeant McBride testified that he received a telephone call from Mr. Stoneback on March 19, 1969. Mr. Stoneback advised him that an individual had purchased cylinders and a cutting pin, and entered a white Lincoln occupied by two other males. After petitioner's arrest, Sergeant McBride, acting on his own, displayed a group of photographs to Messrs. Stoneback and Pollard. The photographs included the petitioner and two other men arrested with him. Petitioner was not represented by counsel at this photographic identification even though under Michigan law, where a defendant is in custody or can be readily produced for a lineup, the police may not conduct a photographic identification in the absence of counsel. *People v. Beasley*, 55 Mich.App. 583, 223 N.W.2d 77 (1974). The

trial judge, therefore, sustained petitioner's objections and excluded the photographic identification.

Messrs. Stoneback and Pollard, nevertheless, were permitted to identify petitioner in court. Petitioner on cross-examination brought out the prior photographic identification. The prosecutor, on redirect examination, then brought out all the circumstances surrounding the photographic identification.

Sergeant McBride was permitted to testify from his notes that Mr. Stoneback had given him the license number of the automobile driven by the men who purchased the cutting and welding equipment, that Mr. Stoneback had received the license number from Mr. Pollard, that the license number was the same as the license number on petitioner's automobile and the cutting and welding equipment were similar to that used in the jewelry store robbery.

Mr. Stoneback testified that two men came into his shop on March 19 and 20, 1969, to purchase welding equipment and that he had called Sergeant McBride on March 19th to advise him of that fact, that four or five days thereafter Sergeant McBride visited his shop and that he and Mr. Pollard identified two of the photographs displayed to them. Mr. Stoneback identified the petitioner as having been one of the two individuals who had been in his store.

■ State court evidentiary rulings are not cognizable in a federal habeas corpus proceeding absent a showing that the challenged ruling infringed one of petitioner's specific constitutional rights. *Manning v. Rose*, 507 F.2d 889 (6th Cir. 1974); *Maggitt v. Wyrick*, 533 F.2d 383, 385 (8th Cir. 1976). Generally, states are permitted wide latitude in formulating rules of evidence and trial practice and procedure. *Manning v. Rose, supra.* The evidentiary rulings challenged by petitioner do not infringe any of his specific constitutional rights nor are they so prejudicial as to deny him due process of law.

■ Petitioner argues that Sergeant McBride's testimony concerning the license number, even though refreshed by his notes, constituted objectionable hearsay and violated his right of confrontation. The fact that Sergeant McBride could not remember the specific license number without reference to his notes is irrelevant. They were admissible as past recollection recorded and his availability for cross-examination permitted petitioner to develop how, when, where and under what circumstances the notes were made to test their credibility. Since Sergeant McBride and the two other interested witnesses were in court to testify and were subjected to cross-examination, there clearly was no violation of petitioner's right of confrontation.

■ Petitioner contends that the trial court's allowing witness Neal Stoneback to testify after the prosecutor filed an affidavit that Stoneback did not have material evidence to offer denied him due process. Petitioner argues that inasmuch as Mr. Stoneback's testimony was "devastating to the defense" it was inherently unfair, citing *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). It is clear from the transcript that the prosecutor erred in his statement that Mr. Stoneback did not have relevant or material information to offer when in fact he was able to identify the petitioner. When the prosecutor discovered at the retrial that Mr. Stoneback was able to identify the three men purchasing the welding equipment, he sought permission from the court to endorse Mr. Stoneback on the witness list. The trial court afforded petitioner a continuance in order to prepare for that testimony. Defense counsel rejected this offer and insisted on a mistrial. Petitioner does not allege that the prosecutor was guilty of deliberate misconduct or that he sought an unfair advantage by deceptively filing an affidavit. The petitioner did not have a constitutional right to prevent witness Stoneback from testifying. In view of the trial court's willingness to continue the trial and permit defense counsel to prepare for Mr. Stoneback's testimony, petitioner's conviction was not inherently unfair or so fundamen-

tally defective that it amounted to a miscarriage of justice. *DeBerry v. Wolff*, 513 F.2d 1336, 1338 (8th Cir. 1975). Petitioner also argues that witness Pollard discussed his testimony with Mr. Stoneback contrary to the direction of the court. This does not constitute a constitutional violation where there is no allegation that the prosecution encouraged or condoned such discussion. In his closing argument, defense counsel urged the jury to discredit Mr. Stoneback's testimony because of the "refresher course" that he received from witness Pollard and defense counsel further pointed out discrepancies in the testimony of Messrs. Stoneback and Pollard. The jury nevertheless elected to credit Mr. Pollard's testimony.

■ Petitioner next argues that the trial court improperly permitted the prosecutor to develop during redirect examination the facts and circumstances surrounding the photographic identification made by witnesses Pollard and Stoneback. On cross-examination, defense counsel inquired whether the witnesses were shown photographs of the petitioner. Thus, it was proper for the prosecutor to explain during redirect examination new matters brought out on cross-examination. If petitioner did not wish the circumstances surrounding the photographic identification to be known, he should not have introduced the subject on cross-examination. Petitioner also argues that the record does not establish that the in-court identification had an independent basis apart from the photographic identification. The trial court, however, found that both witnesses had been previously instructed to look out for suspicious looking persons buying welding equipment, that they did keep a lookout, that they had spent at least ten minutes with the petitioner on one occasion and saw him at least on one other occasion, and that they gave descriptions shortly after they saw the defendant. The trial judge's findings are fairly supported by the record and we are bound by that determination. 28 U.S.C. § 2254(d).

Petitioner, moreover, does not have a constitutional right to the presence of counsel at a photographic identification. *United States v. Ash*, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973). Thus, even assuming that the trial court erroneously found that both witnesses had an independent basis for the in-court identification, they could, nevertheless, make an in-court identification.

Petitioner defended on the theory that his codefendants were hitchhikers whom he had never seen before. He presented two alibi witnesses to account for his time while the burglary was in progress. These witnesses testified that petitioner and another individual came into a bar in Adrian after 6:00 P.M., that petitioner ordered a beer, obtained a quantity of change and thereafter engaged in a lengthy long-distance telephone conversation. During this time, petitioner's companion was receiving directions to Toledo. These witnesses testified that after a considerable period of time, petitioner and his companion left the bar.[2] The trial court instructed the jury, *inter alia*, that "an alibi is sometimes easy to prove and hard to disprove."

Petitioner argues that the instruction had the effect of casting upon him the burden of proving his defense of alibi. He further argues that the refusal of the Michigan Court of Appeals to apply retroactively *People v. McCoy*, 392 Mich. 231, 220 N.W.2d 456 (1974), which disapproved the instruction, violated his due process rights and that the state appellate court discriminated against him in applying state procedure contending that *People v. Hampton*, 384 Mich. 669, 187 N.W.2d 404 (1971) holds that a subsequent ruling on jury instructions is to be applied retroactively where the defendant raised the objection at trial and preserved the question on appeal.

■ When the entire instruction is considered, it is apparent that the complained of portion did not impermissibly shift the burden of proof to the defendant.

---

**2.** In addition to his alibi defense, petitioner attempted to demonstrate that whoever burglarized the jewelry store acted in concert with the

owner to defraud the owner's insurance company.

The trial court specifically instructed the jury that the prosecution had the burden of proof and that if the jury had a reasonable doubt that the defendant was present during the commission of the crime they should acquit him. The trial court further instructed the jury that they should give the defendant the benefit of any such doubt. Thus, the instruction taken as a whole as a matter of federal constitutional law, does not shift the burden of proof to the defendant. It did not, therefore, infect the entire trial so as to deny petitioner his right to due process of law. *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). Petitioner's claim that the state court's refusal to apply the *McCoy* decision retroactively discriminated against him is frivolous. Petitioner's trial was concluded some two months prior to that decision. A state court is not constitutionally required to apply the decisions of its highest courts retroactively to intermediate transactions. *Wainwright v. Stone,* 414 U.S. 21, 24, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973).

Petitioner's fifth and sixth allegations derive from the same factual circumstances. Petitioner asserts that beginning in 1972, two years prior to his 1974 conviction, he was an informant for the Federal Bureau of Investigation and the United States Department of Justice Task Force assigned to the Detroit Office. Agents of the Federal Bureau of Investigation were investigating the circumstances surrounding the Michigan Supreme Court's *sua sponte* grant of leave to appeal petitioner's 1970 conviction following a prior denial of that application. Petitioner had advised federal agents that he paid a sum of money to a bondsman to obtain an appeal by the Michigan Supreme Court. Petitioner asserts that in April 1975, it was publicly disclosed that the investigation by federal agents had focused upon then Supreme Court Justice John Swainson. In July 1975, Mr. Swainson was indicted by the federal grand jury for allegedly agreeing to accept a bribe from petitioner, while petitioner was working as an informant for federal law enforcement officials, in return for assurances that the Michigan Supreme Court would review petitioner's 1970 conviction and ultimately reverse it. Petitioner further asserts that it was widely publicized that the Michigan Supreme Court engaged the services of an attorney to protect its interests "from the insinuations of such damaging allegations," that the Chief Justice of the Michigan Supreme Court, speaking in his official capacity repeatedly stressed that he did not believe the "accusations against former Justice Swainson," that the attorney engaged by the Michigan Supreme Court attended a portion of Mr. Swainson's trial, that he was the government's principal witness, that three Justices of the Michigan Supreme Court, including one former Justice, appeared and testified as witnesses on behalf of Mr. Swainson. The petitioner asserts that within several weeks of these events, the Michigan Court of Appeals heard oral arguments on petitioner's 1974 retrial and conviction. Finally, petitioner asserts that five days after the Court of Appeals filed its opinion, on November 29, 1975, petitioner filed an application for leave to appeal, a motion to disqualify the Michigan Supreme Court and a motion for immediate consideration. The Michigan Supreme Court granted petitioner's motion for immediate consideration and, thereafter, on January 29, 1976, denied petitioner's motion for recusal and denied his application for leave to appeal.

Petitioner argues that the interests of the justices testifying for Mr. Swainson were so adverse to his that they were disqualified as a matter of constitutional law. He further argues that he has sufficiently demonstrated that as a matter of fact these justices were biased, and that if in fact they were, his due process rights have been violated. Respondents argue that there is no constitutional violation because petitioner does not have a right to appeal to the Michigan Supreme Court. The respondents miss the thrust of petitioner's contention. Petitioner is contending, and properly so, that he has a right in the first instance to fair and impartial consideration of whether leave to appeal will be granted. Once granted, he has a right to

review by an impartial court. Nevertheless, we hold that, absent establishment of bias in fact, the Justices of the Michigan Supreme Court were not automatically disqualified as a matter of constitutional law. The interest alleged is not the direct, substantial interest which would disqualify the justices as a matter of constitutional law. *Compare Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972) and *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) *with Dugan v. Ohio*, 277 U.S. 61, 48 S.Ct. 439, 72 L.Ed. 784 (1928). *See also United States v. Cavataio*, 425 F.Supp. 1250 (E.D.Mich.1977). Petitioner's allegation that the justices were in fact biased against him precludes our granting of respondents' Rule 12(b)(6) motion. Respondents have not addressed this allegation in their motion to dismiss or by a motion for summary judgment. Standing unrefuted, these allegations clearly state a claim for habeas corpus relief. *Webb v. Beto*, 362 F.2d 105, 109 (5th Cir. 1966).

Finally, petitioner contends that he was denied due process and effective assistance of counsel because he was tried, convicted and sentenced without informing his attorney that he had been, for two years prior to his conviction, providing substantial information to federal authorities which ultimately led to the indictment of Mr. Swainson. Petitioner alleges that he concealed this information from his defense counsel at the insistence of federal agents. He now argues that, notwithstanding the reasons for withholding this information from his attorney, his defense counsel and the trial judge did not have the benefit of the information concerning his cooperation with federal agents. Conceding that this information was irrelevant to the issue of his guilt and could not have been presented at trial, petitioner argues that this material might have been considered by his counsel

and the state in plea bargaining negotiations and might have been considered by Judge Martin in sentencing.

Petitioner's speculations concerning plea bargaining are governed by *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). The Court rejected petitioner's argument that defendant's continued duplicity denied him the opportunity to plea bargain, explaining:

> [T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial. It is a novel argument that constitutional rights are infringed by trying the defendant rather than accepting his plea of guilty.

Petitioner's allegations regarding sentencing are more substantial. *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); *United States v. Stein*, 544 F.2d 96 (2d Cir. 1976). We are unable to determine whether petitioner acted voluntarily in keeping this information from his attorney and the trial judge. Further development of the record is necessary to determine whether petitioner was so instructed by federal officials and if his reliance upon such instructions was justified.[3]

Accordingly, IT IS ORDERED that respondents' motion to dismiss be and the same hereby is granted with respect to the first, second, third, and fourth grounds contained in the petition, as set forth above;

IT IS FURTHER ORDERED that respondents' motion to dismiss be and the same hereby is denied with respect to the fifth and sixth grounds in the petition, as set forth above;

IT IS FURTHER ORDERED that petitioner may have ten (10) days from the date of this order to respond to the tardy affidavit of Judge Martin submitted by the respondents.

---

**3.** During the preparation of this opinion, respondents submitted an affidavit of the Honorable Rex B. Martin, the sentencing judge which states that Judge Martin was aware of petitioner's cooperation with federal authorities prior to sentencing petitioner and considered it. He further states that after sentencing he was aware of petitioner's cooperation in the investigation of Mr. Swainson. We do not understand why this affidavit was so belatedly filed. We must allow our decision to stand. We leave for later consideration the effect of the tardy affidavit, but only after petitioner has had an opportunity to respond to it.