**Ronald JOHNSON, Plaintiff-Appellant,**

v.

**Warden LUMPKIN, et al.,
Defendant-Appellee.**

**CA No. 84–6208.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1985.

Decided Aug. 23, 1985.

Frank J. Ragen, San Diego, Cal., for plaintiff-appellant.

Thomas L. Casey, Lansing, Mich., for defendant-appellee.

Before WALLACE, NELSON and CANBY, Circuit Judges.

CANBY, Circuit Judge:

■ Petitioner Ronald Johnson appeals from the district court's denial of his petition for a writ of habeas corpus. The petition at issue represents the latest collateral challenge to the proceedings in which Johnson was ultimately sentenced on state criminal charges, proceedings which also led to the federal investigation, indictment, and conviction of a member of the Michigan Supreme Court. Johnson's cooperation was important in this secret federal investigation, cooperation secured in exchange for the unauthorized promise of federal agents that he would serve no time on state charges.[1] Although we affirm the district court's determination that Johnson was not denied due process either by the failure of federal agents to fulfill this promise or by the failure of the state sentencing judge to take his cooperation into account, we remand for consideration of whether the conduct of federal agents, in the context of this case, interfered with Johnson's sixth amendment right to the effective assistance of counsel.[2]

## BACKGROUND

In 1970, petitioner Ronald Johnson was convicted in Michigan of breaking and entering and larceny. His conviction was affirmed by the Michigan Court of Appeals in 1972. Three weeks after denying his application for leave to appeal, the Michigan Supreme Court, *sua sponte*, permitted Johnson's appeal, *People v. Whalen*, 388 Mich. 770 (1972), reversed his conviction and ordered a new trial. *People v. Whalen*, 390 Mich. 672, 213 N.W.2d 116 (1973).[3] This reversal, a marked departure from the court's usual procedure, prompted a federal bribery investigation of John Swainson, then an Associate Justice of the Michigan Supreme Court. In return for the assurance of federal agents that he would not serve time on the state charges, Johnson actively cooperated in the bribery investigation while awaiting retrial. Playing an important role in their investigation, his cooperation eventually helped in securing Swainson's criminal conviction and resignation from the bench.[4]

At the insistence of federal agents, Johnson did not advise his own defense counsel of his key role and cooperation in the Swainson investigation until after retrial and sentencing. In 1974, Johnson was convicted and sentenced to the maximum term of confinement permitted by statute.[5] The judgment was affirmed by the Michigan Court of Appeals. *People v. Whalen*, 65 Mich.App. 687, 238 N.W.2d 376 (1975). The Michigan Supreme Court denied Johnson's motion for recusal (brought on the ground of the Court's prior association with former Justice Swainson), and denied Johnson's application for leave to appeal. *People v. Whalen*, 395 Mich. 827 (1976).

In 1976, Johnson petitioned for a writ of habeas corpus in federal district court for the Eastern District of Michigan. Transferred shortly thereafter to a federal cor-

---

1. The characterization of Johnson's cooperation and of the agents' promises is drawn both from the 1981 opinion of the Michigan Supreme Court, *People v. Whalen*, 412 Mich. 166, 312 N.W.2d 638 (1981), and from the order of the district court that is the subject of this appeal.

2. We review denial of a habeas corpus petition de novo where the facts are undisputed. *See Roth v. United States Parole Commission*, 724 F.2d 836, 839 (9th Cir.1984), citing *United States v. Guido*, 597 F.2d 194, 197–98 (9th Cir.1979) (per curiam).

3. All proceedings involving petitioner in the Michigan state courts, as well as his habeas action in the Eastern District of Michigan, used petitioner's real name, John Whalen. After petitioner's custody was transferred by contractual agreement from state to federal authorities, petitioner began the present action under the name Ronald Johnson.

4. Indicted for allegedly agreeing to accept a bribe and perjury before the grand jury investigating the bribery charge, Swainson was ultimately convicted of three counts of perjury and resigned his commission.

5. Johnson was sentenced to concurrent terms of 6 years, 8 months to 10 years on the breaking and entering charge, and 2 years, 8 months to 4 years on the larceny charge.

rectional facility in California, Johnson filed the instant petition in the Southern District of California a year later. Although the Michigan district court denied the state's motion to dismiss with respect to two of Johnson's six claims, *Whalen v. Johnson*, 438 F.Supp. 1198 (E.D.Mich. 1977), the Michigan petition was later dismissed with prejudice at Johnson's request. *Whalen v. Johnson*, 452 F.Supp. 556 (E.D. Mich.1978).

The district court in California first dismissed the petition, but later vacated that dismissal. It then stayed its proceedings to permit Johnson to seek relief on unexhausted claims in the Michigan state courts. The state court modified Johnson's sentence to a term of probation, finding that the promises of federal officials, while unenforceable, should nevertheless be honored as a matter of "simple justice." The Michigan Court of Appeals affirmed, but the Michigan Supreme Court, after denying Johnson's motion for recusal, reversed the trial court's order and reinstated Johnson's original sentence. *People v. Whalen*, 412 Mich. 166, 312 N.W.2d 638 (1981).

An evidentiary hearing followed in the district court below on what the court characterized as the sole remaining issues: whether Johnson's due process rights had been violated either (1) when federal agents failed to keep their promise that he would serve no time on state charges; or (2) when the Michigan Supreme Court, despite its prior association with Justice Swainson, refused to recuse itself. Unpersuaded by either claim, the court denied Johnson's petition.

## DISCUSSION

### A. California Petition

The district court declined to find that Johnson had been denied due process either by virtue of the failure of federal agents to fulfill their promises, or, in what the court

characterized as a related point, the failure of the state trial court to take those promises and Johnson's cooperation into account before sentencing.[6] We affirm these rulings of the district court. We find it necessary, however, to remand the case to the district court for further proceedings to determine whether Johnson was denied effective assistance of counsel in the Michigan prosecution.

The Michigan Supreme Court found that FBI agents "had indeed promised [Johnson] that he 'would do no time' for his Michigan convictions if he provided informant services, and that [he] did provide such services...." *People v. Whalen*, 412 Mich. 166, 168, 312 N.W.2d 638, 639 (1981). The Court also found that Johnson "was instructed to tell no one" of his agreement to cooperate and, as a result, neither defense counsel nor the trial judge appreciated that such promises had been made. *Id.*

■ As a general rule, fundamental fairness requires that promises made during plea-bargaining and analogous contexts be respected. *See Santobello v. New York*, 404 U.S. 257, 262–63, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971); *United States v. Hudson*, 609 F.2d 1326, 1328 (9th Cir.1979); *United States v. Goodrich*, 493 F.2d 390, 393 (9th Cir.1974). That rule, however, is typically subject to two conditions: (1) the agent must be authorized to make the promise; and (2) the defendant must rely to his detriment on that promise. *Hudson*, 609 F.2d at 1329; *Goodrich*, 493 F.2d at 393.

Assuming, *arguendo*, that Johnson did detrimentally rely upon this promise,[7] he has nevertheless failed to meet his burden of establishing that the agents' promise was properly authorized. *See United States ex rel. Wissenfeld v. Wilkins*, 281 F.2d 707, 713 (2d Cir.1960) (burden of persuasion is on habeas petitioner to show

---

**6.** The district court also rejected Johnson's claim that the Michigan Supreme Court had been biased against him. This claim has been abandoned on appeal.

**7.** We leave the question of Johnson's detrimental reliance *vel non* to the district court. *See* Part C *infra*.

false promises induced guilty plea).[8] Nothing in the record suggests that federal agents were authorized by state authorities to promise that Johnson would serve no time on state charges. Quite the contrary, the record is replete with references to the need of federal officials to keep state officials totally unaware of Johnson's cooperation.

■■■ Nor does Johnson cite authority for the novel proposition that the unauthorized promises of federal agents are binding in state judicial proceedings. State agents are without authority to bind federal proceedings, *see United States v. McIntosh*, 612 F.2d 835, 837 (4th Cir.1979); *United States v. Long*, 511 F.2d 878, 881–82 (7th Cir.), *cert. denied*, 423 U.S. 895, 96 S.Ct. 196, 46 L.Ed.2d 128 (1975), and the converse is no less true. In the absence of authorization, the promises made by federal agents in this case do not bar the reinstatement of Johnson's original sentence by the Michigan Supreme Court. *People v. Whalen*, 412 Mich. 166, 312 N.W.2d 638 (1981).[9]

■■■ We are also unable to find a constitutional violation in the failure of the state trial court to take these unauthorized federal promises or Johnson's cooperation with federal officials into account before sentencing. Reliance upon *Townsend v.*

*Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), is misplaced. There, information before the sentencing judge was untrue. Here, it was simply incomplete, and incomplete as a result of Johnson's own concealment. Although the inducement prompting this concealment may arguably have violated Johnson's sixth amendment right to the effective assistance of counsel, *see* Part C *infra*, the concealment itself reflects Johnson's independent calculation that remaining silent, given federal promises, would be in his own best interest. Under these circumstances, there was no violation of due process.[10]

### B. Effect of Prior Michigan Petition

In Johnson's previous habeas petition in the Eastern District of Michigan, the district court dismissed four of Johnson's six claims pursuant to Fed.R.Civ.P. 12(b)(6). *Whalen v. Johnson*, 438 F.Supp. at 1205. The court declined, however, to dismiss Johnson's claim that he was denied the effective assistance of counsel by heeding the caution of federal agents not to reveal his cooperation to his attorney.[11] Instead, the court noted that "[f]urther development of the record is necessary to determine whether petitioner was so instructed by federal officials and if his reliance upon such instructions was justified." *Id.* (footnote omitted).[12]

---

**8.** In the context of a federal proceeding, this court has suggested that where constitutional or statutory safeguards are surrendered in exchange for an unauthorized promise of immunity, the promise—however unauthorized—may still provide a defense to prosecution. *Hunter v. United States*, 405 F.2d 1187, 1188 (9th Cir. 1969). While the district court distinguished this dictum by concluding that Johnson's "cooperation cost him no constitutional or statutory rights," our remand requires reassessment of this conclusion in light of the sixth amendment right to effective assistance of counsel.

**9.** We intimate no view as to the correctness of that reinstatement under state law, an issue exclusively consigned to the Michigan Supreme Court.

**10.** In addition, we note that the state sentencing judge, when later apprised of Johnson's cooperation, indicated that prior knowledge of that fact would not have altered his sentence. *See* n. 12 *infra*.

**11.** The court also declined to dismiss Johnson's claim that members of the Michigan Supreme Court were, in fact, biased against him. While this claim was subsequently addressed and rejected by the district court in the instant action, it has not been pressed upon appeal.

**12.** Johnson argued that knowledge of his cooperation might have aided his attorney's efforts on his behalf either before Johnson entered his plea or at his sentencing hearing. The court did permit Johnson ten days to respond to a tardy affidavit received from the Hon. Rex B. Martin, Johnson's sentencing judge, indicating "that Judge Martin was aware of petitioner's cooperation with federal authorities prior to sentencing petitioner and considered it." 438 F.Supp. at 1205 n. 3. In light of our disposition, we intimate no view as to the significance of this affidavit, nor as to the correctness of the district court's conclusion that since "'there is no constitutional right to plea bargain,'" 438 F.Supp. at 1205 (quoting *Weatherford v. Bursey*, 429 U.S.

While this Michigan petition was still pending, Johnson filed the instant petition in the Southern District of California. With the exception of a new claim that the failure of federal agents to fulfill their promise violated his right to due process of law, this second petition set forth essentially the same contentions as those pending in Michigan. Johnson's request for dismissal of his Michigan petition without prejudice was denied. *See* 452 F.Supp. at 558. After inquiring, however, "whether dismissal of his Michigan petition would bar his California action" and being assured that the Michigan district court "had no intention of usurping the role of the judge presiding over the matter in California," *id.*, Johnson agreed to dismissal *with* prejudice. *Id.* In dismissing Johnson's petition, the Michigan district court noted that

> [I] believe that, particularly in light of 28 U.S.C. § 2244(a), petitioner will be collaterally estopped from raising in California the grounds he raised in the petition which we now dismiss. The determination of that issue, however, is for the court in California. . . .

*Id.*

Unfortunately, the record certified on appeal fails to reflect why the district court in California determined not to reach John-

son's ineffective assistance of counsel claim. From the docket sheet below, we know only that the district court originally entered a Memorandum Decision & Order dismissing Johnson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2244(a), (b); we do not know its rationale. In essence, section 2244 vests district courts with the discretion to decline to consider on habeas corpus contentions previously considered and rejected on prior applications for the writ.[13]

Several months later, however, the district court vacated this order, granting a stay to permit Johnson to seek relief in the Michigan courts on those claims not previously exhausted. Following review by the Michigan state courts, culminating in the reinstatement of his sentence by the Michigan Supreme Court, Johnson successfully moved to reopen proceedings in California. At this point, the district court ordered rebriefing on what it characterized as "the two remaining issues;" namely, whether Johnson's due process rights had been violated by the failure either of federal agents to keep their promises or of the Michigan Supreme Court to recuse itself from consideration of Johnson's case.

We are unable to ascertain why the district court in California failed ex-

---

545, 561, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977)), Johnson cannot claim that the denial of material arguably relevant to plea bargaining denied him the effective assistance of counsel. *But cf. Dillon v. Duckworth,* 751 F.2d 895, 901 (7th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 2344, 85 L.Ed.2d 859 (1985) (failure to explore possibility of plea bargaining where state wishes to use defendant's testimony in accomplice's trial supports conclusion that defendant was denied effective assistance of counsel). We do note, though, that Johnson's counsel testified that had he known of his client's cooperation, plea bargaining was simply one of a number of steps he would have taken on his client's behalf before entering a plea.

**13.** 28 U.S.C. § 2244 provides that:

(a) No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus and the petition

presents no new ground not heretofore presented and determined, and the judge or court is satisfied that the ends of justice will not be served by such inquiry.

(b) When after an evidentiary hearing on the merits of a material factual issue, or after a hearing on the merits of an issue of law, a person in custody pursuant to the judgment of a State court has been denied by a court of the United States or a justice or judge of the United States release from custody or other remedy on an application for a writ of habeas corpus, a subsequent application for a writ of habeas corpus in behalf of such person need not be entertained by a court of the United States or a justice or judge of the United States unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ, and unless the court, justice, or judge is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ.

pressly to entertain Johnson's effective assistance claim, a claim asserted in both his Michigan and California petitions.[14] We may not affirm a district court's denial of the writ of habeas corpus unless the court held a hearing on the merits of the petition, or the record on appeal indicates that the court independently reviewed all relevant portions of the state court record. *Rhinehart v. J.B. Gunn,* 598 F.2d 557, 558 (9th Cir.1979) (per curiam); *Turner v. Chavez,* 586 F.2d 111, 112 (9th Cir.1978) (per curiam). Finding neither indication in the record before us, we remand for such independent consideration of Johnson's sixth amendment claim as proves appropriate.[15]

In so doing, we necessarily hold that despite the Michigan district court's suggestion, Johnson is not "collaterally estopped" from raising in California the grounds raised in his Michigan petition, the dismissal with prejudice notwithstanding. First, it is axiomatic that *res judicata* is inapplicable in habeas proceedings. *See,*

e.g., *Sanders v. United States,* 373 U.S. 1, 8, 83 S.Ct. 1068, 1073, 10 L.Ed.2d 148 (1963).[16] Second, while 28 U.S.C. § 2244 is designed to address the problem of successive petitions based on grounds previously heard and decided, *id.* at 12, 83 S.Ct. at 1075, the Supreme Court has observed that

> [c]ontrolling weight may be given to denial of a prior application for federal habeas corpus or § 2255 relief only if (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application.

*Sanders,* 373 U.S. at 15, 83 S.Ct. at 1077 (footnote omitted).[17] Because we find that the prior dismissal in Michigan was not a decision on the merits, the district court may not decline to entertain Johnson's sixth amendment claim on the basis of § 2244.[18]

---

14. The Michigan district court held that members of the Michigan Supreme Court were not automatically disqualified as a matter of constitutional law, reserving the issue of bias-in-fact. 438 F.Supp. at 1205. Expressly relying upon this holding, the district court below reached only the latter issue. Since all claims were ultimately dismissed with prejudice in Michigan, however, we infer that the court below did not view itself as "collaterally estopped" from reaching claims in Johnson's California petition merely because the same claims had been dismissed with prejudice in Michigan. Unfortunately, the record fails to reveal why the court below felt obligated to reach Johnson's bias claim while neglecting to treat his claim of ineffective assistance of counsel.

15. Although we reject the Michigan district court's suggestion that 28 U.S.C. § 2244 permits the California district court to decline to consider claims essentially identical to those originally lodged in the prior Michigan district court proceeding, a court may refuse to entertain a subsequent petition "where the second or successive application is shown, on the basis of the application, files, and records of the case alone, conclusively to be without merit," *Sanders,* 373 U.S. 1, 15, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963) or where the subsequent petition is abusive. *Id.* at 17, 83 S.Ct. at 1078.

16. Although the Michigan district court couched its opinion in terms of "collateral estoppel," the distinction, while frequently significant, *see*

*Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955), need not detain us in the current context. First, *res judicata* is often used broadly to cover merger, bar, collateral and direct estoppel. *Id.* at 326 n. 6, 75 S.Ct. at 867 n. 6. Second, neither doctrine is applicable in habeas proceedings. *Hardwick v. Doolittle,* 558 F.2d 292, 295 (5th Cir.1977), *cert. denied,* 434 U.S. 1049, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978).

17. Although *Sanders* involved a motion by a federal prisoner under § 2255, rather than an application for habeas corpus, its guidelines are fully applicable to habeas petitions from state prisoners. *Walker v. Lockhart,* 726 F.2d 1238, 1241 n. 7 (8th Cir.) (en banc), *cert. dism'd,* —— U.S. ——, 105 S.Ct. 17, 82 L.Ed.2d 912 (1984). Johnson, though serving his sentence in a federal facility prior to his release on bond, petitions as a state prisoner.

18. Section 2244 essentially codifies the *Sanders* criteria. *See generally Walker v. Lockhart,* 726 F.2d at 1242; *but cf. St. Pierre v. Helgemoe,* 545 F.2d 1306, 1308–09 & n. 4 (1st Cir.1976) (noting differences). Although both the Michigan district court and the court below invoked § 2244(a), that section applies to federal prisoners; § 2244(b) applies to state prisoners like Johnson. The significance, if any, however, of literal differences between the two sections, *see Lockhart, supra,* need not concern us. While

Under the statute, discretion is only permitted if the prior decision followed "an evidentiary hearing on the merits of a material factual issue, or ... a hearing on the merits of an issue of law...." 28 U.S.C. § 2244(b). As the Fourth Circuit has observed,

[s]ection 2244 is designed to safeguard against the multiplication of meritless petitions by prisoners who have already had the same issues considered and decided. However, the doctrine should not be invoked against a petition which seeks again an adjudication theretofore repeatedly sought but never obtained on the merits.

*Hobbs v. Pepersack*, 301 F.2d 875, 879 (4th Cir.1962).[19]

Although it is true that dismissals with prejudice are generally treated as preclusive decisions on the merits,[20] legal rules and presumptions fully operative in other contexts must not be "construed to derogate from the traditional liberality of the writ of habeas corpus...." *Sanders*, 373 U.S. at 11, 83 S.Ct. at 1075. The efficient administration of justice lends powerful support to a presumption against entertaining actions previously dismissed with prejudice.[21] Yet justice itself requires that we

assure prisoners unimpeded access to the writ of habeas corpus, a " 'great constitutional privilege' " of " 'immemorial antiquity,' " "inextricably intertwined" with the preservation "of personal liberty." *Fay v. Noia*, 372 U.S. 391, 400–01, 83 S.Ct. 822, 828, 9 L.Ed.2d 837 (1963) (citations omitted). Thus, we conclude that the dismissal of petitioner's habeas corpus petition with prejudice at his request did not constitute a decision "on the merits" for purposes of section 2244(b) or *Sanders*. *See Wilwording v. Swenson*, 502 F.2d 844, 849 (8th Cir.1974), *cert. denied*, 420 U.S. 912, 95 S.Ct. 835, 42 L.Ed.2d 843 (1975) (in the context of habeas corpus, decision "on the merits" presupposes an evidentiary hearing on contested issues of fact; prior dismissal with prejudice fails to satisfy this criterion).

The Michigan district court did not determine the legality of Johnson's detention. On his ineffective assistance of counsel claim, Johnson has yet to receive, either in Michigan or California, the federal hearing or the independent federal review of the state court record to which he is entitled. Accordingly, the district court may not decline to entertain Johnson's sixth amend-

---

§ 2244(a) expressly incorporates *Sanders'* "ends of justice" criterion and § 2244(b) does not, both contemplate dismissal of a second or successive application only if the prior determination represents a decision on the merits. *See also* Rule 9(b), Rules Governing Section 2254 Cases in the United States District Courts, *set forth at* 28 U.S.C. foll. § 2254 (dismissal permitted, *inter alia*, only if prior decision was on the merits).

**19.** *Sanders* relied upon *Hobbs* in reaching the identical proposition in the context of successive applications by federal prisoners under 28 U.S.C. § 2255: "The prior denial must have rested on an adjudication of the merits of the ground presented in the subsequent application. *See Hobbs v. Pepersack*, 301 F.2d 875 (C.A. 4th Cir.1962). This means that if factual issues were raised in the prior application, and it was not denied on the basis that the files and records conclusively resolved these issues, an evidentiary hearing was held." *Sanders*, 373 U.S. at 16, 83 S.Ct. at 1077.

**20.** Dismissal with prejudice is defined as "[a]n adjudication on the merits, and final disposi-

tion, barring the right to bring or maintain an action on the same claim or cause. It is res judicata as to every matter litigated." *Black's Law Dictionary* 421 (5th ed. 1979); *see also Lawlor*, 349 U.S. at 326, 75 S.Ct. at 867; 1B J. Moore, *Moore's Federal Practice* ¶ 0.409[1–.2], at 317 (2d ed. 1984); Fed.R.Civ.P. 41.

**21.** While the writ should never be denied where appropriate, the very absence of traditional principles of *res judicata* in the habeas context makes the need for finality all the more pressing. *See, e.g., Walker v. Lockhart*, 726 F.2d at 1248–49 (citing *Sanders*, 373 U.S. at 24–25, 83 S.Ct. at 1081–82 (Harlan, J., with Clark, J., dissenting); *United States ex rel. Townsend v. Twomey*, 452 F.2d 350, 357 (7th Cir.), *cert. denied*, 409 U.S. 854, 93 S.Ct. 190, 34 L.Ed.2d 98 (1972); *United States ex rel. Schnitzler v. Follette*, 406 F.2d 319, 322 (2d Cir.), *cert. denied*, 395 U.S. 926, 89 S.Ct. 1783, 23 L.Ed.2d 244 (1969); Bator, "Finality in Criminal Law and Federal Habeas Corpus for State Prisoners," 76 Harv.L.Rev. 441, 451 (1963)).

ment claim on the basis of the prior dismissal with prejudice.[22]

### C. Issues on Remand

On remand, the district court should assess whether Johnson's sixth amendment right to the effective assistance of counsel was abridged. The issues presented by Johnson's petition are novel, even unique; thus, we will not undertake to define the issues in detail, but will leave that task to the district court.

We note, however, that one relevant line of inquiry is whether Johnson can bear the burden of showing that the conduct of the agents produced circumstances in which "the likelihood that any lawyer, even a fully competent one, could provide effective assistance of counsel [was] so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984); *see Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) ("Government violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense."). If so, relief can be granted without a showing of specific prejudice at the trial. Another relevant line of inquiry is that which must be pursued if there is no showing of the extreme circumstances described above: whether, from whatever cause, "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 104 S.Ct. at 2064. The inquiry here is dependent on the factual context of defendant's trial and sentencing, and the standards evolved by the Supreme Court are to be flexibly applied:

> [T]he principles we have stated do not establish mechanical rules. Although those principles should guide the process

of decision, the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.

*Strickland,* 104 S.Ct. at 2069.

Thus, we conclude that while "[o]ne threat to the effective assistance of counsel ... lies in the inhibition of free exchanges between defendant and counsel," *Weatherford v. Bursey,* 429 U.S. 545, 554–55 n. 4, 97 S.Ct. 837, 843 n. 4, 51 L.Ed.2d 30 (1977), we are remanding to provide Johnson with an opportunity to demonstrate whether he meets the criteria of *Cronic* and *Strickland* as applied to his unusual situation. The district court should explore all appropriate avenues in examining this problem.

### CONCLUSION

The district court's denial of Johnson's two due process claims is affirmed. The district court erred, however, in failing to rule upon Johnson's claim that the conduct of the federal agents deprived him of the effective assistance of counsel. With regard to that issue, the denial of the petition is reversed and the case is remanded to the district court for further proceedings.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

**22.** To permit dismissal of the Michigan petition to bar subsequent federal review in California would also be manifestly unjust in view of Johnson's stated concerns and the Michigan's district court's assurance that the collateral effect of the dismissal would be left for the district court in California to determine. 452 F.Supp. at 558.