STATE OF NORTH CAROLINA v. DENNIS LEO STURGILL, Defendant

No. COA95-743

(Filed 5 March 1996)

**1. Evidence and Witnesses § 1290 (NCI4th)— police interrogation—promise not to prosecute**

Promises not to prosecute a defendant made during a police interrogation in return for a defendant's confession deserve the same scrutiny under contract and due process principles as promises made in the context of plea bargains.

**Am Jur 2d, Evidence §§ 740-741.**

**Admissibility of confession as affected by its inducement through artifice, deception, trickery, or fraud. 99 ALR2d 772.**

**2. Evidence and Witnesses § 1290 (NCI4th)— confession—nonprosecution agreement between officers and defendant—State's refusal to honor—defendant's reliance on agreement—right to relief**

Though a police detective was not vested with either actual or apparent authority to make a nonprosecution agreement with defendant in return for his confession, defendant was nevertheless entitled to relief when the State refused to honor the agreement since he changed position in a fashion constituting detrimental reliance upon the agreement in derogation of his constitutional rights, including his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel.

**Am Jur 2d, Evidence §§ 740-741.**

**Admissibility of confession as affected by its inducement through artifice, deception, trickery, or fraud. 99 ALR2d 772.**

**3. Evidence and Witnesses § 1290 (NCI4th)— confession—nonprosecution agreement between defendant and officers—State's refusal to honor—suppression of confession—statutory basis**

Where police promised defendant during an interrogation that they would not seek a habitual felon indictment in return for his confession, and the promises were the product of bad faith or

STATE v. STURGILL

[121 N.C. App. 629 (1996)]

fraud, the police conduct required suppression of the confession pursuant to N.C.G.S. § 15A-1021 and -974, which have to do with the conduct of governmental officers in criminal matters.

**Am Jur 2d, Evidence §§ 740-741.**

**Admissibility of confession as affected by its induce-ment through artifice, deception, trickery, or fraud. 99 ALR2d 772.**

**4. Evidence and Witnesses § 1290 (NCI4th)— police promises disregarded by State—defendant's reliance on promises—confession suppressed—new trial**

Where defendant reasonably relied on police promises not to prosecute him as a habitual felon in return for his confession, and those promises were disregarded by the State, traditional notions of substantial justice and fair play, as well as defendant's substantive due process rights, mandated a new trial and suppression of defendant's confession.

**Am Jur 2d, Evidence §§ 740-741.**

**Admissibility of confession as affected by its induce-ment through artifice, deception, trickery, or fraud. 99 ALR2d 772.**

Appeal by defendant from judgment entered 6 January 1995 by Judge William H. Freeman in Rockingham County Superior Court. Heard in the Court of Appeals 12 February 1996.

*Attorney General Michael F. Easley, by Assistant Attorney General J. Philip Allen, for the State.*

*C. Orville Light for defendant appellant.*

SMITH, Judge.

The central issue on appeal is whether any remedy is available to defendant, who detrimentally relied on a police promise not to prosecute him, which promise was broken. In this case, the police promised defendant that he would not be prosecuted as an habitual felon if defendant gave information relevant to his involvement in five break-ins. Based on this offer, defendant provided police with self-incriminating statements pertinent to the break-ins. Subsequently, the State refused to honor the bargain. Defendant was indicted and con-

victed on five counts of breaking or entering and larceny as an habitual felon. At trial, defendant's statements to police were received in evidence as part of the State's case.

We hold that a remedy exists to cure a broken police nonprosecution promise, when that promise induces detrimental reliance by a defendant in derogation of his constitutional rights, and fundamental fairness requires the fashioning of a curative remedy. Since defendant reasonably relied on police promises not to prosecute, and those promises were disregarded by the State, we hold that traditional notions of substantial justice and fair play, as well as defendant's substantive due process rights, mandate a new trial, and suppression of defendant's confession. We also conclude, independent of constitutional issues, that suppression is warranted by N.C. Gen. Stat. §§ 15A-1021, -974 (1988) (statutes concerning the conduct of governmental officers in criminal matters).

The State's evidence at trial tended to show the following facts. On 13 January 1994, Lieutenant Barry Carter and Detective Greg Moore of the City of Eden Police Department arrested defendant on an outstanding warrant for felonious breaking or entering and larceny. The detectives transported defendant to the police department and advised defendant of his *Miranda* rights. Next, Detective Moore began a custodial interrogation. Detective Moore told defendant that several break-ins had occurred in the old Leaksville area of Eden, that the police had overwhelming evidence against him, and that he was going to be charged with those break-ins even though only one warrant for his arrest was outstanding.

According to defendant, Detective Moore told him that if defendant did not provide requested information, the police would "jack[] the bond up" so that defendant would have to stay in jail, and would not be able to have surgery performed on a previously injured hand. Defendant then indicated the only statement he wanted to make was that he did not commit any of the crimes. Defendant made this statement orally and in writing. At this point, Detective Moore terminated questioning and got up to leave the room.

As Detective Moore started to leave the room, the State's evidence indicates that defendant asked "what would be in it for him" if he provided information regarding the break-ins. Defendant testified "[t]hey said they would not charge me with the habitual felon [*sic*]" if he signed such a statement. Detective Moore then described the location of the break-ins and asked defendant to tell him about each one. Lieutenant Carter transcribed defendant's descriptions of how he

broke into each location and what he took. Defendant signed the second statement, confessing to participation in the break-ins.

Defendant raises six assignments of error on appeal. However, since we find the issues raised in defendant's first assignment of error dispositive, we do not reach any other issues posed by defendant. Defendant's first assignment of error addresses the trial court's refusal to quash the indictment against him for being an habitual felon. Defendant argues the State should be bound by the promises made to him by police, as defendant relied on those promises by relinquishing his constitutional rights. Accordingly, defendant argues the trial court should have quashed the habitual felon indictment. We agree defendant is entitled to a remedial cure for the abrogation of the nonprosecution agreement. However, we do not agree that the proper remedy is specific performance. Instead, we hold that defendant is entitled to a remedy which returns him to the *status quo ante*, because of defendant's detrimental reliance on the promises of the police, which resulted in violation of defendant's due process rights. Since the State admitted defendant's confession in evidence at trial, no remedy short of suppression suffices to accomplish this goal.

By detrimental reliance, we mean that defendant has shown such actual reliance on police nonprosecution promises that a fair trial was not possible, *State v. Bogart*, 788 P.2d 14 (Wash. App. 1990), and that "no other remedy is available which will return defendant to the position he enjoyed prior to making the agreement at issue." *People v. Gallego*, 424 N.W.2d 470, 475 n.10 (Mich. S.Ct. 1988) (*Gallego* II).

Defendant's due process argument has, as its genesis, the following colloquy between the prosecution and the police:

[Police witness]: Obviously I told him that we were not able to promise him anything, nor was anybody in a higher position able to promise him anything. I told him that I knew his record. I had run a criminal history on him. I told him that he would probably qualify as an habitual felon. And all that I could tell him, if he told the truth and helped us get back as much of the stolen property as we could that *we would not seek to indict him as a habitual felon*.

. . . .

[Prosecutor]: You mentioned about if he told you the truth and helped to get the property back, *you* mentioned something about him not being charged as an habitual felon?

[Police Witness]: I told him that *I would not seek* an indictment as an habitual felon if he told the truth and helped to get as much of the stolen property as we could.

[Prosecutor]: Did you promise that he would not be indicted as an habitual felon?

[Police Witness]: No, sir, I just told him that I would not do it.

(Emphasis added.) Defendant maintains the State, "as a matter of sound judicial policy," should be bound by Detective Moore's bargain with defendant. Defendant's argument has particular force, because defendant's confession was offered in evidence by the State at trial. This is a case of first impression because defendant does not argue in this assignment of error that coercion or inducements rendered his confession involuntary. *See State v. Richardson*, 316 N.C. 594, 602, 342 S.E.2d 823, 829 (1986). Rather, defendant avers that police promises deliberately induced a confession which was voluntary, but accomplished through purposeful deception.

Our Supreme Court addressed a somewhat similar issue in *State v. Collins*, 300 N.C. 142, 265 S.E.2d 172 (1980). In *Collins*, the defendant moved to dismiss possession of controlled substances charges because the State failed to honor a plea arrangement reached between the defendant's attorney, a police officer, and an assistant district attorney. The negotiations resulted in a written plea agreement, which provided that defendant would give information and assistance to the police in return for: (1) the State's guarantee that upon his guilty plea, the defendant would not receive active time; and, (2) dismissal of the defendant's pending district court cases.

Later the same day, at a probable cause hearing on the felony charges, a different assistant district attorney refused to honor the existing plea agreement, based on his opinion that the plea bargain was inappropriate, and he had not been consulted. The defendant was subsequently indicted on the felony charges, pled not guilty, and the case went to trial. The defendant's motion to dismiss, for failure of the State to abide by the plea negotiation, was denied. The defendant was found guilty and imprisoned.

Recognizing the *Collins* case as one of first impression, our Court relied on the decision in *Santobello v. New York*, 404 U.S. 257, 30 L.Ed.2d 427 (1971), as the foundation for its analysis. The *Collins* Court stated that an acceptance of a plea of guilty, after plea promises have been made:

"must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."

*Collins*, 300 N.C. at 145, 265 S.E.2d at 174 (quoting *Santobello*, 404 U.S. at 262, 30 L.Ed.2d at 433). Relying on this language in *Santobello*, the *Collins* Court held that "[t]he State may withdraw from a plea bargain arrangement at any time prior to, but not after, the actual entry of the guilty plea by defendant *or any other change of position by him constituting detrimental reliance upon the arrangement." Collins*, 300 N.C. at 148, 265 S.E.2d at 176 (emphasis added).

The Court further elaborated that, "[w]hen viewed in light of the analogous law of contracts, it is clear that plea agreements normally arise in the form of unilateral contracts. The consideration given for the prosecutor's promise is not [the] defendant's corresponding promise to plead guilty, but rather is [the] defendant's actual performance by so pleading." *Id.* at 149, 265 S.E.2d at 176. Applying these principles, the Court found the defendant there had neither entered a guilty plea, nor in any way relied on the plea agreement to his detriment; and, therefore, the State's rescission of the agreement did not prejudice defendant or violate his constitutional rights.

Our Courts have relied on *Collins* in subsequent cases which have raised the issue of plea bargain enforceability, when the State has withdrawn its promise, or reneged on its end of the bargain. *See, e.g., State v. Isom*, 119 N.C. App. 225, 458 S.E.2d 420 (1995) (where the defendant pled guilty in reliance upon the State's agreement that the defendant would be sentenced as a committed youthful offender (CYO) and the State subsequently breached the agreement, even though the defendant was not eligible to be sentenced as CYO, the State's action was untenable and the defendant was entitled to withdraw his plea); *State v. Rodriquez*, 111 N.C. App. 141, 431 S.E.2d 788 (1993) (where plea agreement expressly stated that the State would take no position on sentencing, the district attorney's remarks on nonstatutory aggravating factors violated the plea agreement and the defendant was entitled to enforcement of the bargain); *State v. Hudson*, 331 N.C. 122, 415 S.E.2d 732 (1992) (where the defendant negotiated plea arrangement with the State, but the arrangement was never judicially approved under N.C. Gen. Stat. § 15A-1023(b) (1988)

and the State withdrew its proposal, there was no detrimental reliance).

The principles set forth in *Collins* and its progeny are equally applicable to the instant case. However, we note two distinguishing factors: (1) the promise made to defendant was not in the context of plea negotiations, but rather was made during police interrogation; and (2) a police detective, rather than the prosecutor, made the so-called "nonprosecution agreement" with defendant. We address each of these factors separately.

### PROMISES MADE OUTSIDE THE PLEA BARGAINING CONTEXT

Certain interrogation techniques are so offensive to a civilized system of justice that they must be condemned under the Fourteenth Amendment's Due Process Clause. *See, e.g., Miller v. Fenton,* 474 U.S. 104, 88 L.Ed.2d 405 (1985). Generally, "fundamental fairness requires that promises made during plea-bargaining *and analogous contexts,* be respected." *Johnson v. Lumpkin,* 769 F.2d 630 (9th Cir. 1985) (emphasis added). In such cases, where suspects are less likely to have an attorney present during police interrogation than in the more formal setting of negotiating a plea bargain,. "unrepresented suspects are in greater need of protection from government inducements than represented ones because they are more 'sensitive to inducement.' " Welsh S. White, *Confessions Induced By Broken Government Promises,* 43 Duke L.J. 947, 970 (March 1994) (quoting *Brady v. United States,* 397 U.S. 742, 754, 25 L.Ed.2d 747, 759 (1970)).

The *Collins* decision is an affirmation that, when a defendant "takes . . . action constituting detrimental reliance upon [an] agreement," *Collins,* 300 N.C. at 149, 265 S.E.2d at 176, the Constitution requires courts to " 'insure the defendant what is reasonably due in the circumstances.' " *Id.* at 145, 265 S.E.2d at 174 (quoting *Santobello,* 404 U.S. at 262, 30 L.Ed.2d at 433); *see also Rodriquez,* 111 N.C. App. 141, 431 S.E.2d 788 (when the State makes a promise in exchange for a guilty plea, the right to due process and basic contract principles require strict adherence).

Numerous decisions by the United States Circuit Courts and state courts have extended due process and attendant contract principles to plea promises outside of the traditional context. For instance, in *United States v. Carter,* 454 F.2d 426, 427 (4th Cir. 1972), *cert. denied,* 417 U.S. 933, 41 L.Ed.2d 237 (1974), a United States Attorney, acting without proper authority, promised that a defendant "would not be

prosecuted elsewhere for any crime arising from . . . stolen checks."
Thereafter, a United States Attorney in another jurisdiction sought
prosecution on those stolen check charges. The *Carter* Court disal-
lowed such a breach of the bargain, by noting:

> The solution [to this problem] does not lie in formalisms about
> the express, implied or apparent authority of one United States
> Attorney, or his representative, to bind another United States
> Attorney and thus visit a sixteen year sentence on a defendant in
> violation of a bargain he fully performed. There is more at stake
> than just the liberty of this defendant. At stake is the honor of the
> government [and] public confidence in the fair administration of
> justice . . . ."

*Id.* at 428.

Federal courts have repeatedly enforced non-plea agreement
promises of nonprosecution, or other concessions, made by agents of
the Drug Enforcement Administration or the Federal Bureau of
Investigation, without evidence that a United States Attorney or the
Attorney General had delegated them authority to make such a
promise. *See United States v. Carrillo*, 709 F.2d 35 (9th Cir. 1983)
(indictment dismissed where the defendant cooperated with DEA
agents in return for a promise not to prosecute); *United States v.
Rodman*, 519 F.2d 1058 (1st Cir. 1975) (the court dismissed indict-
ment where Securities and Exchange Commission agents failed to
perform their agreement to "strongly recommend" to the United
States Attorney not to prosecute the defendant in return for his
cooperation).

In *Carrillo*, the Ninth Circuit followed the precepts of the United
States Supreme Court in *Santobello*, finding a cooperation agreement
with the DEA "analogous to a plea bargain agreement" with a United
States Attorney. *Carrillo*, 709 F.2d at 36. Both the *Carrillo* and
*Rodman* courts ultimately grounded their decisions to grant
aggrieved defendants a remedy to the premise that "settled notions of
fundamental fairness" within our judicial system require it. *Carrillo*,
709 F.2d at 37; *Rodman*, 519 F.2d at 1060.

Other state courts have arrived at conclusions identical to those
at the federal level. In *People v. Gallego*, 372 N.W.2d 640 (Mich. App.
1985) (*Gallego* I), the Michigan Court of Appeals granted relief to a
defendant when a police detective improperly, and without any
authority whatsoever, induced defendant "to sign what amount[ed] to

a confession in violation of his Fifth Amendment rights." *Id.* at 642. The remedy granted defendant by the *Gallego I* court was suppression of the confession. *Id.* at 643. The Michigan Supreme Court affirmed, holding that the Constitution's principles do not allow "sacrific[ing] the standard of fundamental fairness in our judicial system [and] damages [to] the integrity of our criminal justice system." *Gallego II,* 424 N.W.2d at 478, *aff'g Gallego I,* 372 N.W.2d at 642. The *Gallego* cases demonstrate the pervading requirement of fairness inherent in our civilized conception of due process. *See Commonwealth v. Stipetich,* 652 A.2d 1294 (Pa. S.Ct. 1995), *aff'g in part and rev'g in part,* 621 A.2d 606 (Pa. Super. Ct. 1993) (proper response to detrimental reliance procured through inaccurate police representations of nonprosecution is suppression of evidence, not dismissal); and *see People v. Fisher,* 657 P.2d 922, 930 (Col. S.Ct. 1983) (en banc) (discussed *infra*).

[1] We hold that promises not to prosecute a defendant made during a police interrogation, in return for a defendant's confession, deserve the same scrutiny under contract and due process principles as promises made in the context of plea bargains. In so holding, we follow the great weight of authority, and the more reasoned approach, in this nation's state and federal jurisdictions.

## PROMISES MADE BY THE CITY OF EDEN POLICE DETECTIVES

[2] As we previously observed, principles of ordinary contract law (by analogy) and due process govern the enforcement of promises made in the plea bargain context. *Collins,* 300 N.C. at 149, 265 S.E.2d at 176; and *see Johnson,* 769 F.2d 630. This due process analysis was mandated by the United States Supreme Court in *Santobello v. New York,* 404 U.S. at 262, 30 L.Ed.2d at 433. The *Santobello* court established the proposition that state and federal courts have a constitutional obligation to provide relief to defendants aggrieved by broken plea agreements. *Id.* at 263, 30 L.Ed.2d at 433. Then, in *Mabry v. Johnson,* 467 U.S. 504, 511, 81 L.Ed.2d 437, 445 (1984), the Supreme Court explicitly grounded broken plea bargains to a Due Process context, noting the Court's "concern . . . with the manner in which persons are deprived of their liberty . . . in any fundamentally unfair way."

In North Carolina, law enforcement officers have no independent authority to make prosecutorial decisions. "Our Constitution expressly provides that: 'The District Attorney *shall* . . . be responsible for the *prosecution* on behalf of the State of *all* criminal actions

STATE v. STURGILL

[121 N.C. App. 629 (1996)]

in the Superior Courts of his district . . . .' " *State v. Camacho*, 329 N.C. 589, 593, 406 S.E.2d 868, 871 (1991) (quoting N.C. Const. art. IV, § 18) (emphasis in original). The clear mandate of this provision is that the authority to prosecute criminal actions is vested with the district attorney. *Id.*

This determination necessarily raises the issue of whether any authority existed to bind the State to Detective Moore's promise to defendant. This question is troublesome under the facts of this case, in light of Detective Moore's deliberately ambiguous statements to defendant, that if defendant would tell the truth and help retrieve stolen property, "I would not seek to indict him as a habitual felon," and "we would not seek to indict him as a habitual felon." At the suppression hearing, Detective Moore evaded the obvious import of these statements, by asserting he only promised defendant that *he* would not indict him. We note that Detective Moore's testimony at trial differed materially from his statements at the suppression hearing:

> [Prosecutor]: Did you promise [defendant] anything if he made those statements?
>
> [Detective Moore]: No, sir.

It does not appear from the record that Detective Moore had actual authority from the prosecutor to make these promises to defendant. Therefore, in order to hold the State to these promises under an agency theory, Detective Moore had to have acted under the apparent authority of the State. *See Plaster v. United States*, 720 F.2d 340, 354 (4th Cir. 1983). Apparent authority arises when a principal "intentionally or by want of ordinary care causes or allows [a] third person to believe that [an] agent" possesses authority to act for that principal. Black's Law Dictionary 96 (6th ed. 1990); and *see Wachovia Bank v. Bob Dunn Jaguar*, 117 N.C. App. 165, 172, 450 S.E.2d 527, 531 (1994). Agreements made by an agent, vested with the apparent authority of a principal, are binding on that principal. *Id.*

Based on the record, we do not find the District Attorney's office in Rockingham County held police detectives out, as possessing any authority to enter nonprosecution agreements with suspects, in return for making a confession. *See People v. Dandridge*, 505 N.E.2d 30, 31 (Ill. App. Ct. 1987). We therefore conclude Detective Moore was not vested with either actual or apparent authority to make a nonprosecution agreement with defendant.

However, lack of an agency relationship between the Eden Police, and the District Attorney's office, does not mean defendant in the instant case is without remedy. As the *Collins* Court made clear, the paramount consideration in a plea bargain context is whether defendant has changed position in a fashion "constituting detrimental reliance upon the arrangement." *Collins*, 300 N.C. at 148, 265 S.E.2d at 176. The change of position contemplated in *Collins* is a defendant's detrimental reliance on a governmental promise, which results in a derogation of his constitutional rights. Such agreements may not be avoided to the prejudice of defendants as those "defendants have a constitutional right to be treated with 'fairness' throughout the [prosecutorial] process." *Id.* at 146, 265 S.E.2d at 174.

It is inescapable that broken promises made to a defendant by the police, if relied on to the constitutional detriment of that defendant, mandate relief by our courts. The appropriate consideration, as we see it, is not the power of the police to bind the office of a North Carolina district attorney, but rather

> the scope of a defendant's due process right to enforce a governmental promise not to use evidence against him, upon which he detrimentally relied in furnishing incriminating evidence to police.

*Fisher*, 657 P.2d at 930. In *Fisher*, the Colorado Supreme Court affirmed the trial court's suppression of the defendant's videotaped confession, gained in exchange for a police promise not to use the videotape in any criminal proceeding against him. *Id.* We find the situation in *Fisher* analogous to the instant one, and we find the *Fisher* court's due process analysis persuasive and consistent with North Carolina precedent.

The State maintains this case "is disposed of by *State v. Richardson*," 316 N.C. 594, 598, 604, 342 S.E.2d 823, 827, 831 (1986), *rev'g*, 70 N.C. App. 509, 320 S.E.2d 900 (1984), because defendant here *initiated* the discussion. The State's *Richardson* argument is as follows: "[Detective] Moore testified, and the trial court found, that Moore said he would not seek an habitual felon indictment if the defendant told the truth and helped recover some of the stolen property." However, since "defendant initiated a discussion of potential benefits . . . if he confessed . . . there were no promises or threats that would render the defendant's confession involuntary." In *Richardson*, the defendant argued his confession to crimes "committed in North Carolina was involuntary because it was obtained through threats and

promises giving him hope of benefit" made by Tennessee law enforcement officials. *Id.* at 598, 342 S.E.2d at 827. Our Supreme Court disagreed, holding that, "[w]hen the totality of circumstances is considered, it is clear . . . that his confession to the North Carolina officers was made voluntarily and with full knowledge of the consequences." *Id.* at 604, 342 S.E.2d at 831. Thus, the holding of *Richardson* pivoted on a finding of voluntariness, as that was the defense theory on appeal. *Id.*

Richardson was wanted for various offenses in Tennessee and North Carolina and was arrested and charged initially in Tennessee. *Id.* at 596-97, 342 S.E.2d at 826. Richardson was subsequently questioned and arrested by North Carolina authorities. At trial, Richardson claimed that a Tennessee police officer had offered him "possibly a probated sentence" if he would cooperate with North Carolina law enforcement officials. *Richardson,* 70 N.C. App. at 510, 320 S.E.2d at 901.

The North Carolina trial court found that no such inducement or "offer of hope and reward" had ever been given Richardson. The trial court found that "in fact, the Defendant was told prior to his [confession to Tennessee authorities] that the District [A]ttorney in North Carolina would prosecute him." *Id.* at 511, 320 S.E.2d at 901. The Supreme Court agreed with the trial court, by "conclud[ing] that defendant was not promised some benefit in exchange for his cooperation." *Richardson,* 316 N.C. at 604, 342 S.E.2d at 830. Instead, the Tennessee authorities told defendant specifically "that [Tennessee] had no control over what happened in other jurisdictions." *Id.* at 603, 342 S.E.2d at 830. Finally, in dicta, the Supreme Court in *Richardson* stated that: "Promises or other statements indicating to an accused that he will receive some benefit if he confesses do not render his confession involuntary when made in response to a solicitation by the accused." *Id.* at 604, 342 S.E.2d at 381.

In short, the State's argument here is an attempt to square the instant facts with those in *Richardson.* This attempt is not persuasive for two reasons. First, the dispositive facts in this case are dramatically different. Second, defendant does not argue the confession was involuntary in this assignment of error. Instead, defendant argues the State should be "bound by the representations of the investigating officer," which induced defendant's detrimental reliance, and so, the State should not have been able to utilize the ill-gotten "fruits of the [police] representation" to prosecute the defendant.

The promises made to Richardson were completely different from the ones at issue here. Richardson was told by police

> the specifics of the charges against him, the range of punishment, and the effect of his cooperation. He was informed that the officers had no authority to make any arrangements concerning the charges against him and that Tennessee authorities had no control over what other states might do concerning crimes within their jurisdiction.

*Richardson*, 316 N.C. at 596, 342 S.E.2d at 826. A reading of the facts from *Richardson*, as described by the Court of Appeals and our Supreme Court, indicates the *Richardson* defendant was not presented with a deceptive or unclear offer by the Tennessee authorities, or anyone else. Richardson was promised "consideration" for his admissions with regard to his crimes committed in Tennessee, not a definite forbearance of prosecution by all law enforcement concerned. *Richardson*, 70 N.C. App. at 511-12, 320 S.E.2d at 901-02.

*Richardson*'s facts stand in stark contrast to the facts at hand. Detective Moore's promise that "I would not seek an indictment as an habitual felon if [defendant] told the truth and helped get back as much of the stolen property as we could" was deceptive and designed to extract incriminating information. The true purpose of the police, in making these promises, is transparent. That purpose was to extract a confession without the hindrance of constitutional guarantees due defendant. However, constitutional due process is not some abstract concept, easily evaded by tactics of "plausible deniability" or the semantic use of double entendre. Within our concept of a civilized, ordered liberty,

> [g]overnmental officials, especially where constitutional rights are involved, may not make broad promissory representations to an accused and then seek to attribute a narrow scope or significance to these promises in an effort to escape resulting obligations.

*Fisher*, 657 P.2d at 929; and *see generally Santobello*, 404 U.S: at 262, 30 L.Ed.2d at 433. Simply put, the level of duplicity in the instant case pales in comparison with the unambiguous and clearly qualified promises made in *Richardson*.

Moreover, we do not find the *Richardson* confession analysis applicable to the instant facts. In *Richardson*, the defendant argued "his confession was involuntary because it was the product of fear

induced by threats and of promises of leniency if he cooperated." *Richardson*, 316 N.C. at 602, 342 S.E.2d at 829. As explained by the *Richardson* Court, defendant's confession was not involuntary, as "it [was] clear that defendant's will was not overborne . . . ." *Id.* at 604, 342 S.E.2d at 831.

Lack of voluntariness is not the defendant's argument in the assignment of error under review. Instead, defendant argues the police officer's promise implicates the due process clauses of the United States and North Carolina Constitutions, because defendant took detrimental actions in reasonable reliance upon the promises of the police. U.S. Const. Amend. XIV; N.C. Const. art. I, § 19 (the Law of the Land Clause). A police officer's promise is just as capable of implicating defendant's constitutional rights as a promise made by a prosecutor, once the right to counsel has attached or custodial interrogation has begun. *See, e.g., Brewer v. Williams*, 430 U.S. 387, 399-400, 51 L.Ed.2d 424, 436 (1977); *see also Massiah v. United States*, 377 U.S. 201, 206, 12 L.Ed.2d 246, 250 (1964); and *see Miranda v. Arizona*, 384 U.S. 436, 444, 16 L.Ed.2d 694, 706 (1966). When the police implicate the constitutional rights of a defendant, as here, the protections of due process necessarily arise. *Brewer*, 430 U.S. at 398, 51 L.Ed.2d at 436.

The detrimental actions taken by defendant in the instant case include relinquishment of his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel. *People v. Manning*, 672 P.2d 499, 504 (Col. S.Ct. 1983) (en banc); *Gallego I*, 424 N.W.2d at 475. Defendant here had been charged and was in a custodial setting at the time of his confession. The constitutional privilege against self-incrimination, U.S. Const. Amend. V and XIV; N.C. Const. art. I, § 19, applies to any situation where a response to a question may "furnish a link in the chain of evidence needed to prosecute." *Hoffman v. United States*, 341 U.S. 479, 486, 95 L.Ed. 1118, 1124 (1951). The instant defendant was in just such a situation. The Fifth Amendment is not an inert right, for its very purpose is to protect a defendant against "official questions put to [an accused] in any proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77, 38 L.Ed.2d 274, 281 (1973). Detective Moore's interrogation consisted of promises crafted to elicit incriminating responses from the defendant. It is evident that defendant chose to discuss his involvement in the break-ins in exchange for nonprosecution as an habitual felon.

Similarly, defendant's right to counsel was implicated by Detective Moore's promises. In *Massiah*, 377 U.S. at 206, 12 L.Ed.2d at 250, the Supreme Court held the government could not deliberately elicit incriminating information from a defendant, after commencement of a criminal prosecution, unless defense counsel was present or defendant had validly waived the right to counsel. *Accord United States v. Henry*, 447 U.S. 264, 274, 65 L.Ed.2d 115, 125 (1980). Anything short of this would deny defendant " 'effective representation by counsel at the only stage when legal aid and advice would help him.' " *Massiah*, 377 U.S. at 204, 12 L.Ed.2d at 249 (quoting *Spano v. New York*, 360 U.S. 315, 326, 3 L.Ed.2d 1265, 1273 (1959) (Douglas, J., concurring)). It is manifest that Detective Moore's promises took place in a custodial, prosecutorial setting. And, inasmuch as the police could not follow through with their promise not to prosecute, defendant's Sixth Amendment right was not validly waived.

Thus, the inquiry here is not whether police coercion rendered defendant's confession involuntary. Instead, the instant due process issues turn on the broad promissory representations made by police to the accused, made worse by police attempts to narrow the scope of these promises, in an effort to escape resulting obligations. *Fisher*, 657 P.2d at 930. In turn, defendant relied on those promises as consideration for his choice to relinquish his Fifth and Sixth Amendment rights.

In this case, the police officer involved had no authority to make the promise in question. However, distinctions between the authority of the police and that of the prosecutor mean little to a defendant negotiating with a government officer. The preeminent consideration is not whether the police had the authority to make the promise, but whether the promise was in fact made. *Palermo v. Warden*, 545 F.2d 286, 295 (2d Cir. 1976) (where defendant detrimentally and reasonably relies on unfulfillable promises by prosecutors, the State may not "disassociate itself . . . from [that] promise"). After all, a police officer is just as capable of implicating defendant's constitutional rights as the district attorney who refused to honor the police promise to defendant. *Brewer*, 430 U.S. at 399-400, 51 L.Ed.2d at 436-37.

In *Brady v. United States*, 397 U.S. 742, 755, 25 L.Ed.2d 747, 760 (1970), the Supreme Court declared that confessions induced by misrepresentation, including unfulfilled or unfulfillable promises, cannot stand. Furthermore, "[w]aivers of constitutional rights not only must

be voluntary but must be knowing, intelligent acts done with suffi-
cient awareness of the relevant circumstances." *Id.* at 748, 25 L.Ed.2d
at 756. In this respect, cases such as *Brady*, which have a primary
focus on voluntariness, illuminate the issues of fairness, detrimental
reliance and due process underlying this appeal. The "reasonable-
ness" of defendant's reliance on police promises is roughly analogous
to the "knowing" and "intelligent" requirements applicable to confes-
sions made during custodial interrogations. *Id.*

Defendant's confession fails the knowing and intelligent require-
ments discussed in *Brady*, which, in turn, leads us to conclude that
this defendant's reliance was reasonable. The confession in this case
was made in response to a fraudulent police promise. The record
demonstrates that stolen articles were recovered as a result of
defendant's confession and that defendant performed his side of the
agreement. (We note the record belies the State's assertion in its brief
that "defendant did not uphold his end of the agreement.") However,
the police could not perform on the promise made defendant. As
such, defendant's confession was not a "knowing intelligent [act]
done with sufficient awareness of the relevant circumstances." *Id.*
*Brady* makes it clear that confessions must be both voluntary, and
intelligent, to pass constitutional muster. *Id.* These two requirements
are independent and of equal importance to a due process analysis.
*Id.*

North Carolina's case law is in accord with *Brady*'s requirements.
Our courts have adopted a "totality of the circumstances" test to
assess the constitutionality of confessions challenged on voluntari-
ness or knowledgeable/intelligent waiver grounds. *State v. Reese*, 319
N.C. 110, 127, 353 S.E.2d 352, 363 (1987); *State v. Jackson*, 308 N.C.
549, 581, 304 S.E.2d 134, 152 (1983); *State v. Carter*, 296 N.C. 344, 353,
250 S.E.2d 263, 269 (1979). In *Reese*, our Supreme Court defined a
knowing and intelligent waiver in this way:

"[W]e have never read the Constitution to require that the police
supply a suspect with a flow of information to help him calibrate
his self interest . . . . [However, the defendant must be] aware of
the state's intention to use his statements to secure a convic-
tion . . . ."

*Reese*, 319 N.C. at 130-31, 353 S.E.2d at 363 (quoting *Moran v.
Burbine*, 475 U.S. 412, 422, 89 L.Ed.2d 410, 421-22 (1986)).

In *Jackson*, the North Carolina Supreme Court addressed police misrepresentation and trickery as it relates to the voluntariness of a confession. *Jackson*, 308 N.C. at 582, 304 S.E.2d at 152-53. There, police attempted to deceive defendant and lied to him about the evidence they had. *Id.* Even though the *Jackson* defendant was not in custody at the time of his confession, a plurality of the Supreme Court still felt it necessary to address the outer limits of police conduct vis-a-vis voluntariness and due process. *Id.* (Martin, J., joined by Copeland and Meyer, JJ., for the plurality; Mitchell, J. (now C.J.), concurred in the result; Exum, J., joined by Branch, C.J., and Frye, J., dissented. This split yielded a 3-1-3 decision upholding the admissibility of the confession.)

In making its final determination that the *Jackson* confession was voluntary, the Court noted that police deception, accompanied by other circumstances, might render a similar confession involuntary. Those contrary factors included: "trick[ery] about . . . possible punishment," and "promises . . . made to him in return for his confession." *Id.* at 582, 304 S.E.2d at 153. More important to resolution of the case at hand here is the substance of Justice Mitchell's concurrence in *Jackson*. Justice Mitchell found that only one element in the case allowed him to concur; that is, the defendant was not in custody when he confessed. *Id.* at 585-86, 304 S.E.2d at 154-55.

The *Jackson* dissent's applicability to the case at hand is patent, as it emphasizes: "[E]ven if . . . defendant's confession is reliable under all the circumstances, the methods of interrogation utilized are so fundamentally unfair as to deny defendant due process of law under the rationales, if not the holdings, of a number of United States Supreme Court decisions . . . ." *Id.* at 602, 304 S.E.2d at 164. (Exum, J., dissenting).

*Jackson*'s force in the instant due process analysis is seminal. Defendant here *was* in custody. Under our facts, we must assume Justice Mitchell would have joined the *Jackson* dissenters, making that side of the opinion a 4-3 majority. If the "fundamentally unfair" interrogation in *Jackson* resulted in the denial of due process to the defendant, it is obvious the police promises here also involved intolerable conduct. For here, the only conceivable purpose of the police conduct was to avoid constitutional protections due defendant.

Had defendant known the police promises were a product of bad faith or fraud, it is unlikely the defendant would have relinquished his constitutional rights. When a promise is made by police to an individ-

ual, in exchange for a confession, the standards of substantive due process prohibit the State from "welshing" on the bargain. *See* Westen & Westin, *A Constitutional Law of Remedies for Broken Plea Bargains*, 66 Cal. L. Rev. 471, 524 (1978). In the final analysis, we are left with the conclusion that the trial court erred as a matter of law in its decision to deny defendant's request for suppression of the confession. The pith of the trial court's denial exists in its findings that "[n]o promises and no offer of reward" were made to defendant. The record is manifestly to the contrary. The statements of Detective Moore, both in the record and the State's brief, indicate promises were made to defendant. The trial court's due process analysis is thus legally insufficient, as it failed to apply the principles of *Collins* and *Santobello*, as interpreted herein, to the evidence. The police promises had no purpose, other than to cause a "change of position by [defendant] constituting detrimental reliance on the arrangement." *Collins*, 300 N.C. at 148, 265 S.E.2d at 176. Due Process would become a meaningless right, if deception might circumvent its guarantees. Due Process is a durable right though, not so easily eviscerated.

[3] In addition to any remedy mandated by due process, the police conduct here affords defendant a statutory remedy as well. N.C. Gen. Stat. § 15A-1021(b) (1988) mandates:

> No person representing the State or any of its political subdivisions may bring improper pressure upon a defendant to induce a plea of guilty or no contest.

Though § 15A-1021(b) provides no express remedy, its statutory partner, N.C. Gen. Stat. § 15A-974 (1988) does. Section 15A-974 creates a decisive remedy for violations of § 15A-1021(b), and in pertinent part, provides as follows:

> **§ 15A-974. Exclusion or suppression of unlawfully obtained evidence.**
>
> Upon timely motion evidence must be suppressed if:
>
>   . . . .
>
> (2) It is obtained as a result of a substantial violation of the provisions of this Chapter [the Criminal Procedure Act]. In determining whether a violation is substantial, the court must consider all the circumstances, including:
>
> a. The importance of the particular interest violated;

b. The extent of the deviation from lawful conduct;

c. The extent to which the violation was willful;

d. *The extent to which exclusion will tend to deter future violations of this Chapter.* (Emphasis added.)

As we have previously spoken at length to the constitutional issues involved in this case, a prolonged application of § 15A-974 to the instant facts would be a redundancy. *Accord State v. Reed,* 879 P.2d 1000, 1002 (Wash. Ct. App. 1994) (remedy for broken 'police promise warranted by the facts, under governmental misconduct statute, rather than detrimental reliance theory). We find the police conduct here to be a substantial deviation from the provisions of § 15A-1021(b). As the Colorado Supreme Court noted in *Manning,* 672 P.2d at 504: " 'At stake is the honor of the Government,' . . . 'To hold otherwise would involve the Court in an artifice perpetrated upon the Defendant.' " (Quoting trial court *sub judice.*)

[4] The last inquiry necessary to our resolution of this matter involves the determination of an appropriate remedy. Defendant maintains the State "should be bound by the representations of the investigating officer." We disagree. In cases such as this, involving defendant's reasonable and detrimental reliance upon a governmental promise, the question of remedy ultimately turns on what type of relief will accord defendant substantial justice. *See, e.g., Manning,* 672 P.2d at 512; *Weinberger v. Romero-Barcelo,* 456 U.S. 305, 312, 72 L.Ed.2d 91, 98-99 (1982).

Because defendant furnished information to the police after a promise was made, the remedy which accords substantial justice to defendant is that which returns him to his position prior to the confession. Thus, since suppression or exclusion of the confession cures defendant's detrimental reliance, specific performance is unwarranted. Moreover, we are not required, as a result of the "constable's blunder," to place defendant in a better position than he enjoyed prior to making the agreement with the police. We are not alone in our decision to deny specific performance of an unauthorized, nonprosecution agreement to facts like those at hand. *Gallego* II, 424 N.W.2d at 475-76 n.12; *see also United States v. Hudson,* 609 F.2d 1326 (9th Cir. 1979). In this respect, the error of the trial court was not in its failure to quash the indictment for being an habitual felon, but for not suppressing the confession as a matter of law.

STATE v. STURGILL

[121 N.C. App. 629 (1996)]

Anything less than suppression under these circumstances would "not approximate the substantial justice which the Due Process Clause guarantees to an accused." *Fisher*, 657 P.2d at 930. We choose suppression rather than dismissal in this case, as dismissal is a disfavored and "drastic remedy." *Gallego I*, 372 N.W.2d at 643; and *see Stipetich*, 621 A.2d 606. This remedy is also consistent with the provisions of N.C. Gen. Stat. § 15A-974, in that suppression will "tend to deter future violations" of this type. *See* § 15A-974(2)(d). We thus observe, that:

> "Our numerous precedents ordering the exclusion of such illegally obtained evidence assume implicitly that the remedy does not extend to barring the prosecution altogether. So drastic a step might advance marginally some of the ends served by the exclusionary rules, but it would also increase to an intolerable degree interference in having the guilty brought to book."

*Gallego II*, 424 N.W.2d at 472 (quoting *United States v. Blue*, 384 U.S. 251, 255, 16 L.Ed.2d 510, 515 (1966)).

We do not mean to imply that specific performance will never be available when police promises result in detrimental reliance by a defendant inducing relinquishment of constitutional rights. Instead, we adopt the most neutral remedy available, suppression, which returns all parties to the *status quo ante*. As it is our intent to return all parties to their pre-confession position, any evidence arising from the wrongful confession is also barred under the "fruit of the poisonous tree" doctrine. *See State v. Beveridge*, 112 N.C. App. 688, 693, 436 S.E.2d 912, 915 (1993). The gravamen of our holding is that, "law enforcement processes are committed to civilized courses of action. When mistakes of significant proportion are made, it is better that the consequences be suffered than that civilized standards be sacrificed." *People v. Reagan*, 235 N.W.2d 581, 587 (Mich. S.Ct. 1975).

Accordingly, we order that defendant be granted a new trial on all charges. The confession and evidence arising therefrom are suppressed.

New trial.

Judges EAGLES and WYNN concur.