AMENDED OPINION AND AWARD (amended to correct stipulatedcompensation rate from $284.00 to $426.00)
The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Mary Moore Hoag and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award except for the modifications relating to the number of weeks of compensation to which plaintiff is entitled.
* * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties through a Pre-Trial Agreement and at the hearing before Deputy Commissioner Hoag as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times herein, including 27 October 1992 and 27 May 1994.
3. Plaintiff's average weekly wage at the relevant times herein was $638.97, yielding a compensation rate of $426.00.
4. Defendant-employer is qualified as self-insured and Aegis was the adjusting agent on 27 October 1992 and 27 May 1994.
5. Plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer to her back on 27 October 1992.
6. The parties stipulated into evidence the following:
a. Records form Dr. Ira M. Hardy, II;
b. Records of Dr. Richard L. Pippin;
 c. Records from Quadrangle Medical Specialists, P.A.;
d. Records from Pitt County Memorial Hospital and;
e. Records from Eastern Radiologists, Inc.
7. The parties further stipulated that the issues to be resolved in this case are:
 a. Whether plaintiff's injury of 27 May 1994 causally related to her injury by accident sustained on 27 October 1992, and;
b. If so, to what benefits is plaintiff entitled?
* * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Hoag, plaintiff was a forty-six year old registered nurse and married. Plaintiff was employed by Pitt County Memorial Hospital and had been so since 1987. Plaintiff had worked as an Emergency Department Staff Nurse, an Epidemiology Nurse and as an EastCare Flight nurse.
2. On 27 October 1993, plaintiff was working in the infectious control department (Epidemiology). Her job required that she research medical records. Occasionally, plaintiff had to walk to a patient's room to read a chart. Otherwise, plaintiff spent her work day in the medical records library reading records. Plaintiff's job in this position was sedentary in terms of its physical demands.
3. While descending a flight of stairs on 27 October 1992, plaintiff slipped. She caught herself and did not fall. In the process of slipping however, plaintiff noticed a pulling sensation in her lower lumbar area and pain in her left hip. Plaintiff had twisted the lumbar area of her back.
4. Plaintiff presented the same day to her employee health physician, Dr. Mark Warren for examination. Plaintiff advised Dr. Warren that she had twisted the left lumbar area of her back and that she had pain radiating down the posterior aspect of her left thigh. Plaintiff's pain was severe from muscle spasms in the lumbar area. Upon examination, Dr. Warren diagnosed a muscle spasm in the left lumber muscles and a general lumbar strain. He prescribed Vicodin, Toradol, Flexeril and Motrin. Plaintiff was advised to stay out of work for the next three to five days.
5. Plaintiff next saw Dr. Warren on 2 November 1992. Dr. Warren added physical therapy to plaintiff's treatment regime. Plaintiff's conservative treatment included medication, physical therapy, sitting and weight restrictions. No radiographic or other diagnostic tests were performed.
6. Plaintiff was assisted in her regime of physical therapy by Ms. Sherry Odom, a licensed physical therapist. Ms. Odom initiated a course of therapy designed to restore full range of motion to plaintiff and to reduce her pain.
7. Plaintiff remained in therapy under Ms. Odom's direction through 25 November 1992. Ms. Odom is not a physician. Although Ms. Odom had definite opinions regarding the nature of plaintiff's injury, the Full Commission does not find her testimony helpful in this regard as it has no basis in science or medicine. Plaintiff also remained under the care of Dr. Warren.
8. Plaintiff was released by Dr. Warren on 25 November 1992, with a twenty pound weight restriction.
9. At that time, plaintiff's lumbosacral strain was resolving, although she continued to experience pain.
10. Plaintiff returned to work on 15 November 1992, in spite of the continuing pain in her lower back. Plaintiff was careful in the performance of her activities in order to protect her back. Additionally, plaintiff walked every day and did exercises recommended during physical therapy in an effort to minimize her pain. Dr. Warren maintained the lifting restriction for two weeks beyond 25 November 1992. At this time, plaintiff was again working as an Infection Control Nurse.
11. In December of 1992, plaintiff transferred to the Emergency Room as a Staff Nurse. Ms. Odom performed an on-site analysis of plaintiff's job on 15 February 1993, and noted plaintiff's ability to perform her job duties with appropriate body mechanics in this physically demanding area.
12. Subsequently, plaintiff transferred again in the hospital and became an Assistant Nurse Manager on One East, a job which required direct patient care, including lifting and moving patients and continual walking. In both her Emergency Room job and the job on One East, plaintiff worked twelve hour shifts and forty hours per week. Her work as an Assistant Nurse Manager continued through May, 1994.
13. On 27 May 1994, a Friday, plaintiff was not scheduled to work. She was also scheduled to be off Saturday and Sunday of that week. Plaintiff arose at approximately 8:00 a.m. on 27 May 1994, and spent the next four hours cleaning her home, including doing laundry, washing dishes and making beds. Around noon on that day, plaintiff was vacuuming her sofa cushions. As she stood up and turned around with the vacuum cleaner hose in her hand, she felt a sudden severe pain like a "bolt of lightning" or "electric shock" through her entire back that began to radiate down her right leg. The pain was so severe that initially, she could not move and had to be assisted by her husband to lie down. Plaintiff contacted her physician, Dr. R. Lee Pippin, who prescribed Flexeril, Motrin and Darvocet. Plaintiff spent the next several days resting at home. However, her pain continued.
14. On 30 May 1994, plaintiff presented to Dr. Pippin. Plaintiff complained of back pain radiating down her right leg. Dr. Pippin diagnosed plaintiff as having back pain with sciatica or inflammation or irritation of the sciatic nerve.
15. A CT scan was completed of plaintiff's lumbosacral spin which indicated a mild concentric disc bulge at L4-L5. Plaintiff was treated conservatively and given prescriptions of Medrol Dosepak, Anaprox and Vicodin.
16. Dr. Pippin referred plaintiff to Dr. Ira Hardy, a neurosurgeon, when conservative treatment failed to relieve plaintiff's symptoms. Plaintiff presented to Dr. Hardy on 14 June 1994 and informed him that she had hurt her back on the job approximately a year and a half previously. Plaintiff also related that she had gradually improved and her symptoms had, for the most part, resolved before the vacuuming incident.
17. On 14 June 1994, plaintiff was experiencing tenderness to palpitation and percussion. She had +2 reflexes at both knees and ankles and straight leg raising was positive in the right leg at about forty degrees. Plaintiff's CT scan, as examined by Dr. Dr. Hardy, had an extruding fragment at L4-L5.
18. Following diagnostic studies, Dr. Hardy performed a limited laminectomy with excision of a protruded disc at L4-L5 on 5 July 1994. A myleogram revealed bilateral L3-L4 and L4-L5 defects. The laminectomy took place at Pitt County Memorial Hospital.
19. Plaintiff did well after surgery and on 5 October 1994, Dr. Hardy released her to return to full time nursing.
20. On or about 24 October 1994, plaintiff again presented Dr. Hardy with increasing symptomology. Dr. Hardy took plaintiff out of work.
21. Dr. Hardy directed that a myelogram be performed on plaintiff on 2 November 1994. This myleogram indicated double density at L3-L4, consistent with an asymmetrical protruded disc. A post-contrast CT showed a small amount of disc material under the ligament on the right side at L3-L4.
22. On 22 December 1994, Dr. Hardy performed additional surgery for a recurrent ruptured disc at L4-L5 and also performed a right L3-L4 laminectomy at that time.
23. Plaintiff presented to Dr. Hardy for a follow up examination on 2 February 1995. Plaintiff had improved and started physical therapy with back strengthening exercises, McKenzie exercises and hamstring stretches. On 20 February 1995, plaintiff was released to return to work half days in non-patient care nursing. After two weeks, plaintiff began full time work in non-patient care nursing.
24. On 26 July 1995, plaintiff was examined by Dr. Hardy once again. At this time, plaintiff had reached maximum medical improvement. Dr. Hardy assigned plaintiff a twenty-five percent (25%) permanent partial impairment rating to her back, based upon the two operations, depressed right knee reflex and a two-level lumbar laminectomy.
25. Plaintiff was discharged from Dr. Hardy's care after her 26 July 1995 visit and given prescriptions for Flexeril and Darvocet. Plaintiff was advised by Dr. Hardy not to be involved in direct patient care nursing, but to continue her work as an Assistant Nurse Manager.
26. Plaintiff had also presented to Dr. Sanford Vernick in the rehabilitation clinic at Pitt County Memorial Hospital for low back pain. On 2 May 1995, Dr. Vernick injected a trigger point. Dr. Vernick also prescribed lumbosacral support and a TENS unit for use in pain management. On 11 May 1995, plaintiff was discharged from physical therapy. At that time she had reduced pain due to use of the TENS unit.
27. Although plaintiff's injury of 27 October 1992, was resolved in May, 1994, she continued to have some pain and discomfort in her back and right leg. Plaintiff continued at her work under stressful situations because she needed the income.
28. The original protrusion of plaintiff's L4-L5 disc occurred at the time plaintiff slipped in the stairwell at work on 27 October 1992. When plaintiff was vacuuming the sofa cushions on 27 May 1994, an extension of the disc protrusion took place and created pressure on a nerve. Plaintiff's testimony, which the Full Commission finds as credible, her medical history, as well as Dr. Hardy's operative findings are consistent with this finding.
29. There is a causal relationship between plaintiff's employment with defendant-employer and the injury of 27 October 1992 and the 27 May 1994 aggravation of those injuries. The incident at home on 27 May 1994, aggravated plaintiff's pre-existing condition by causing an extension of the disc protrusion at L4-L5 and resulted in her back becoming more symptomatic.
30. The exacerbation of plaintiff symptoms and pain on 27 May 1994, was a direct and natural result of the injury by accident plaintiff sustained at work on 27 October 1992.
31. As the result of plaintiff's back injury on 27 October 1992 and the aggravation thereof by the injury sustained on 27 May 1994, plaintiff was unable to earn wages in her position with defendant-employer or in any other employment from 30 May 1994 through 4 October 1994 and from 24 October 1994 through 19 February 1995. From 5 October 1994 until 23 October 1994, and from 6 March 1995 through the present, plaintiff was able to earn her former wages working full time for defendant employer.
32. From 20 February 1995 through 5 March 1995, plaintiff was capable of earning some wages, but less than the amount which she earned as of 27 October 1992 while working part time for defendant-employer.
* * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising to her back out of and in the course of her employment with defendant-employer on 27 October 1992. G.S. § 97-2(6).
2. A medical expert's opinion to a reasonable degree of medical certainty that "a particular cause could or might have produced the result" is sufficient too support an award to an employee. Buck v. Proctor Gamble Co., 52 N.C. App. 88,94 S.E.2d 272 (1981). There is testimony of record given in deposition by plaintiff's surgeon, Dr. Hardy, that plaintiff's original protrusion at L4-L5, to a reasonable degree of medical certainty, occurred at the time plaintiff slipped in the stairwell in 1992 and that the extension and protrusion of against the nerve occurred when plaintiff was injured at home on 27 May 1994. Since the medical causation need only be established by a preponderance of the evidence, causation established to a reasonable degree of medical certainty, as in the case sub judice, is more than sufficient. Hines v. Caldwell Memorial Hospital, 121 N.C. App. 634
(1986).
3. Plaintiff's injury sustained at home on 27 May 1994 was causally related to and a natural consequence flowing from her compensable injury by accident of 27 October 1992. Further, the 27 May 1994 injury materially aggravated for the worse the condition of her back. Id.; Heatherly v. MontgomeryComponents, Inc., 71 N.C. App. 377, 323 S.E.2d 2 (1984), disc.rev. denied, 313 N.C. 329, 327 S.E.2d 890 (1985).
4. An aggravation of a compensable injury is also compensable unless it is the result of an independent intervening cause attributable to plaintiff's own intentional conduct. Plaintiff's injury of 27 May 1994 was not an independent intervening cause of her subsequent injury and disability. Nor was the injury of 27 May 1994 the result of plaintiff's intentional conduct. Horne v. Universal Leaf Tobacco Processors,119 N.C. App. 662, 459 S.E.2d 797, disc. rev. denied, 342 N.C. 192, (1995).
5. As the result of her 27 October 1992 injury by accident and the 27 May 1994 aggravation thereof, plaintiff is entitled to be paid by defendant temporary total disability compensation at the rate of $426.00 for the periods 30 May 1994 through 4 October 1994 and 24 October 1994 through 19 February 1995. G.S. § 97-29.
6. As the result of her 27 October 1992 injury by accident and the 27 May 1994 aggravation thereof, plaintiff is entitled to be paid by defendant temporary partial disability compensation at the rate of two-thirds the difference between her average weekly wage on 27 October 1992 and the amount of wages she was able to earn for the period 20 February 1995 to 5 March 1995. G.S. § 97-30.
7. As the result of her 27 October 1992 injury by accident and the 27 May 1994 aggravation thereof, plaintiff is entitled to be paid by defendant permanent partial disability compensation at the rate of $426.00 per week for 67.5 weeks for the 22.5% disability rating to her back. G.S. § 97-31(23).
8. As the result of her 27 October 1992 injury by accident and the 27 May 1994 aggravation thereof, plaintiff is entitled to have defendant pay for all reasonable medical expenses incurred or to be incurred, including those associated with the surgical procedures performed as the result thereof. G.S. §97-25.
9. Counsel for plaintiff is entitled to a reasonable attorney's fee of 25% of the compensation to which plaintiff is entitled.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies and affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Subject to the attorney's fee hereinafter approved, defendant shall pay plaintiff temporary total disability compensation at the rate of $426.00 per week for the periods 30 May 1994 through 5 October 1994 and 24 October 1994 through 19 February 1995. This compensation having accrued, shall be paid to plaintiff in a lump sum.
2. Subject to the attorney's fee hereinafter approved, defendant shall pay plaintiff temporary partial disability compensation at the rate of two-thirds the difference between her average weekly wage on 27 October 1992 and the amount of wages she was able to earn for the period 20 February 1994 through 6 March 1995, a period of 52 1/7 weeks. This compensation having accrued, shall be paid to plaintiff in a lump sum.
3. Subject to the attorney's fee hereinafter approved, defendant shall pay to plaintiff permanent partial disability compensation at the rate of $426.00 per week for 67.5 weeks for the 22.5% rating to her back. This compensation having accrued, shall be paid to plaintiff in a lump sum.
4. Defendant shall pay the medical expenses incurred or to be incurred by plaintiff as the result of her 27 October 1992 injury by accident and the 27 May 1994 aggravation thereof, including those associated with related surgical procedures.
5. Defendant shall pay an attorney's fee of 25% of the compensation awarded to plaintiff above, and said compensation having accrued, shall be deducted from the amounts owed to plaintiff and paid directly to counsel for plaintiff.
6. Defendant shall pay the costs.
 S/ ___________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ __________________ COY M. VANCE COMMISSIONER
S/ __________________ DIANNE C. SELLERS COMMISSIONER